Ms. Huber was convicted of domestic violence. She transferred to the United States for social retreatment with a backup card, and then the United States Census Commission determined what to do. The only issue on this appeal is whether or not the commission erred when it denied her a third point of her family's responsibility under the United States Census Guideline 3b.1.1. But like David said, there is a clear error to the extent the court needs to make a factual determination. And in this case, that factual determination would be whether or not Ms. Huber was candid at trial for an appeal. However, for the legal argument of whether or not the commission correctly interpreted a guideline calculation, that standard would be used in no other manner to involve an application of the Census Guideline. With respect to the clear error standard, I read the translation of the speech in Mexico, and I have to say that for some ambiguity in my mind as to what happened there, if I would think that the Mexican court in the first appeal was referring to the trial, it would look like she actually resented it, and in a confrontation with witnesses, it seems more likely a trial, to me. But I can't tell that for sure. So how can we conclude that the error, that any error here is clear when it is far more clear what the facts are? You know, I have two answers to that question. The first answer is directly looking at the record. I agree with Your Honor. It is difficult to discern what was happening, because all we have is the Mexican court in Mexico. We don't have the trial in Mexico. However, if the court looks at the SEC record, at page 9, where it has to do with an appeal, at page 9, it suggests that there was actually a hearing on appeal 1. A final hearing was on June 2, 2006. That the case was decided in the trial court in November 2005, almost a month before. So there was a hearing on appeal, and the health were decided on June 16. Now, at the hearing, were there witnesses present? There were. The officers were present? The officers were present at the court hearing. How do we know that? Well, it appears because if you look at the content of the telegraphic records, and there was a hearing now before the hearing, to excerpt of record page 9 to 31, that says section 2, label bodies of the crime. Specifically, excerpt of record page 25. In those pages, what details it seems, and again, it is hard to discern, but what it details is what happened in the lower trial court. And there, at EO 25, where Ms. Hubers' confession begins. And her full statement is there, without any additional issues. If you want to look right before Ms. Hubers' confession, at EO 25, look at the statement that Mr. Crowley posted. Right there, it says that Francisco and Ledo Escobar did not ratify the upheld statement before the judge. Which judge? I don't know. That's the court. But it seems like what they're referring to is that he did not ratify it before the court itself. So, which court before the trial court? There is no such recantation in those pages. ER 9, page 31, line 2. It only comes later than the appellate transcript. And it appears that given that there was an actual appellate hearing on June 2nd, 2006, that there was confusion throughout the field, and Ms. Hubers was correct. Additionally, Your Honor, Ms. Hubers thought that, before the commission's hearing, that if the recantation happened on the field, she would want to testify herself. That was never the case. Why would it make a difference for us whether she attended? She got a hearing because witnesses are present on a field that's very different from an American procedure. But if we had witnesses here, and she came in, and we made her confront the witnesses, and as her testimony, or challenged the officer's testimony, why would we then remove her if she had accepted responsibility? Because the unit of trial, I think, can disagree. Right, but we have a very different proceeding there, and that's sort of a quasi-trial. It's sort of a second trial that's in front of the procedures. We have to fit 3.1.1 to the unit's circumstances. But how would she accept responsibility and sort of not put them to the test if she goes up to the podium to talk, or if she can't testify? Your Honor, Ms. Hubers made a mistake. That's fractured language in the guidelines. It didn't say that Ms. Hubers was an individual. She wasn't one. And the commission only took an application of two cases. The second one is in front of the proceedings. Both of them are in place. Those cases, that a defendant may give a state full and complete confession before trial, we can't, and then go to trial, and still receive the 3.47, because the issue is whether or not they gave the full and complete statement. And, Your Honor, that's why the second answer to your question, it doesn't matter if it's court to decide in Ms. Hubers' favor. It's whether she'd be candidated at trial or on appeal, because the guideline issue in this case, and the application that the commission adopted, all three of these laws provide specific Mexican procedures. You see, Ms. Hubers didn't have the opportunity, Your Honor, to plead guilty. She would never have provided that opportunity. So she had to go to trial. Therefore, the amendments in 2003, the second-page topability guideline, just do not fit the precise circumstances we have here. The amendments added two additional elements for one to receive, a defendant to receive a 3.47 as a possibility. Not only do you need to give a full and complete statement, a government-oriented motion, and you must avoid trial. You'll never get in this context, Your Honor, where a defendant... So the commission has to get into the Mexican procedure. The court has to say, this is all wrong. So, again, my question is, if she's pretending on appeal, whether she's pretending on a trial level or whether she's pretending on appeal, she is putting the state to additional trouble. And why couldn't we be giving her two points when we gave her a third on acceptance of responsibility? Because, again, it is a precise issue under the guideline, and the commission's own internal application says that it is right enough to give a full and complete statement after her arrest and before trial. That's the only issue. And the law enforcement case outside it can also proceed as a confrontment. That's the only issue. If one can't afford appeal, it's irrelevant. And that's because the commission's internal proceeding... Your Honor, I'd like you to read the report. The commission's own internal guideline for this precise situation. Like Your Honor said, we have to adapt it to the Mexican proceeding. And that internal application gives the example that says that the defendant... And that's attached to the opening brief, where a defendant gave a full confession shortly after arrest. That is the example they gave for her third point to be awarded. In a foreign jurisdiction, a defendant is allowed to receive her two points even if they contest her entire proceeding and never give... ...the third point question. If we apply... If we apply the internal... Oh, she absolutely... She absolutely does. The internal guidelines of the commission say one from Mexico, a country like Mexico, there is no ability to plead guilty. You have to go to trial. Just by coming to the United States and admitting to the commission that you're guilty, you get your first two points. Right, but you don't get the third point. Oh, you do, Your Honor. Under subsection 3A, it says that if the information was full and timely, the defendant would get a third point. And they give the example of where a defendant gave a full confession shortly after arrest. That is, just like in this case, where she gave a full, detailed, complete confession that is uncontested in this record. So you want a four-year reduction in the sentence? Is that what you're looking for? It's about three years, Your Honor. For three months, that's what you're seeking? We're seeking that the commission, the remand, that the commission correctly applies the crime. Right. And then you get your only sentence. Three terms, or do you want... I mean, you're asking that the guideline be adjusted. Okay. She already was sentenced below the guideline. She was. But as in the last case... It was on a later case. Right. Your Honor, I do want to take time for rebuttal. May I answer Your Honor's question? Okay, go ahead. The... Even if the commission provided a departure or a 3553A variance from the guideline, the commission first must correctly apply the sentencing guideline. That has to happen first. And it has to be remanded for that consideration. Then the commission can make its determination under 3553A what the variance should be. Now, if the commissioner had said, even if I were to apply that third point, this is the same sentence, then we would agree that this case could not be remanded. Sounds like the last case. But that's not what happened here. The commission made no such findings. Let me ask you, Dave, about the internal of proceedings. Did you say under 3B1.1 that your client gets under 3A rather than 3B? Is that your argument? Yes. She said under both, Your Honor, 3A and 3B. Well, 3B says that if the defendant gets the two-level adjustment, that defendant is not eligible for the three-level adjustment. Thank you. What do you think about that, Your Honor? That's fine. All right. Thank you. Counsel, please proceed. May I please report, Elizabeth Thomas, on behalf of the last case. This court should affirm the commission's application of the guideline because the commission's decision to deny Hoover's request for third-level reduction was not clearly erroneous. The sentencing guidelines in Section 3B1.1b provide that an offender's defense level can be decreased by a third level if the offender assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to interrupt his guilty, thereby committing the government to avoid preparing for trial, and committing no guilty plea for those that they don't have that possibility. How do you translate that to the next of the three? Well, we looked at the other part, the end part, and committed the government and the court to allocate the resources efficiently. And we determined in the totality of circumstances, the entire record, whether it is akin to the United States plea of guilt. So in this case, what's the government's position regarding whether or not the proceedings were akin to a guilty plea? It was not a guilty plea. Why not? Although she initially confessed in writing to the prosecutor, to the police, she did recant at trial, and on appeal. How do we know she recanted at trial? That was the court's rubbing of those accounts, right? Where is it in the transcript of the next proceedings that we know she recanted at trial? Our interpretation of that is based on the translation that we have. As the court stated... What page are you looking at? I'm looking at page 34 to 35. Is that PR 34? Yes, PR 34 to 35. And on those pages, it talks about how she challenges what the police officer stated, that she can't speak Spanish, that she doesn't speak Spanish. That's why she could not have given or signed a statement confessing. And also because, on the record, it states... on page one, it's the fifth record. After review, it is not written for ruling on the record. And how do we know that that was done at trial and not a proceeding on appeal? Well, it's the Commission's reasonable interpretation of these officers' statements. What basis does the Commission have for excluding that this was done at trial rather than at court? Because the... Because you recounted that on appeal, they're actually disappearing. That there were witnesses, including the officers, at this hearing on appeal. It's not clear that there were witnesses at the hearing. It is reasonable for the Commission to interpret it as all these witnesses at the trial because it does say that this record was reviewed, that this was reviewed on the record and that briefs... Also on page three of the exchange of records, it says, once the file and the briefs were received. So, it's referenced that there were briefs that were filed and it referenced that there was a record that was reviewed. It does not clearly state that there were witnesses that were presented. And so, it was the Commission's interpretation that these witnesses were referred to on page 34 and 35 of the excerpted record, page 38 and 39, where it talks about her recanting about the circumstances when the police officer was signing the statement that this did happen at the trial. The hearing examiner reasonably concluded that the situation of a Mexican defendant who recanted at trial was materially different from the situation contemplated by the Commission's document of instruction as we see in the excerpted record on page 87 because she clearly stated that this is a different situation. So, our internal mandate would not apply in this situation. And also, as the finding law is circulated, we're not mandated to follow our instructions even if it did apply in this situation. The Commission considered Huber's conduct during her foreign trial in determining whether she accepted responsibility in Mexico in a manner equivalent to making a guilty plea in the United States. Had Huber confessed and not later recanted at trial or on appeal, the Commission can reasonably infer that her trial would have been less complex and that the prosecution would not have had to marshal witnesses. For the Commission's purposes, does it make a difference whether she recanted at trial or whether she recanted on appeal? No. In both cases, it's not akin to a guilty verdict or a guilty plea here in the United States. She obviously admits that she recanted on appeal, but we believe it also is a reasonable reflection of the record that she also recanted at trial. Also, the version of the guidelines that Huber references does not apply to her situation. The cases that are cited, were before the 2003 amendment to the sentencing guidelines. The guidelines that apply to her because she was sentenced on November 19, 2005 are the November 1, 2005 version of the guidelines. And that language doesn't just talk about timeliness and completeness of the confession, but also talks about how the court allocates its resources efficiently. So, her reliance on those cases, Blanco and Petitas, are misplaced. Because under the law that is applicable to Huber, we must also look at how resources are allocated, both at the trial and at the appellate level. If there are no other questions, I will conclude the panel. Thank you, counsel, if there is none. We'll give you two minutes for rebuttal, if you want to go. Mr. Holmes, I wanted to ask you a question. Of course. Section 3B, your Honor, applies where a defendant confessed to a charge of exceeding in Mexico never takes on an amnesty. So, if your Honor is correct, 3A would apply. Well, I was just asking you, I'm not... I think I just spoke over your remarks, so I wanted to correct that, thank you. 3A is a precise situation, and the internal guidelines say that the defendant qualifies for the two-point deduction, which Ms. Huber did, and self-incriminating intimidation was applied fully in a timely manner, for example, where a defendant gave full confession shorthand to arrest, the defendant is eligible... So, if B applies, she would not get the... That's right. And that would be the situation where any defendant who confessed all exceeding in Mexico comes to the commission, and then finally in this case, that person will get the two-point automatically. And that's what she was referring to. Now, 3A says that if you cooperate in this way, the defendant is eligible for additional guamma. But that doesn't suggest that the defendant is getting guamma. It does say that they're eligible for guamma. So, it sounds like there's still some discretion in the parole commission. Let me ask the question I asked when I asked the government's counsel. If she can't get interceding on a penal and not a trial, why would it make... Why does it make a difference? Because the true purpose of the effective responsibility guideline, as Judge Hall stated in the Longo case, is to reward the defendant in this environment. And with... She's putting the appellate court to this level, and there's a... She's granting her grounds that she can't only get a sentence on appeal. But the court's appeal has to go through a whole lot more here to address all of this. Well, the analogy there would be to a situation where a defendant took an appeal after a plea of guilty, and he didn't send it. There's a whole lot of resources there. No, it would be quite different. If that's where we have a plea of guilty, and then they make an appeal to contempt, but they were not guilty. Well, then we'd have to go back to what the government says in 2001, the time that she was arrested, and Katie's block on Mercedes, which said it's okay to go to trial and confess your guilt as long as you give a full and complete confession. But what about on a public health report that began in November 2005? That would probably be a prospective clause for the one thing, but the second, the more important point... What would be a prospective about that? She's being charged under Mexican law, not under American law. Well, the guideline in place at the time of her offense would have to apply. If the guideline in 2003 results in a more severe penalty and a higher guideline age, it would, of course, have to apply. Well, if the defendant is being imposed by Mexico, it's not being imposed by the United States. It's probably just a subject matter that's corresponding to the United States. I'm sorry. The question would be, if the actual statute of violation would be applying to the 2003 version of the guideline instead of the version of the guideline that's in place at the time of her offense, which guideline one would be 1.136. But the point is that she was a sentence in America. But she referred to the offense, it's linked to the date of the offense. The guidelines say under 1B1.11, that if you apply the guideline in place at the time the defendant committed the offense, if it turns out that the guidelines at the time of the sentence are higher, that results in a higher guideline age. That's the... All right. Did you want to sum up? Yes, please, without any expectations. Thank you. Thank you. Thank you. Thank you for talking to us. Thank you. Thank you.
judges: Rawlinson, Bybee, Beistline